United States District Court
Southern District of Texas
**ENTERED**
December 22, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT      SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Independent Financial Group, LLC | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action H-21-2125 |
| | § | |
| Quest Trust Company, | § | |
|     Defendant. | § | |

# Report and Recommendation

Independent Financial Group, LLC, (IFG) filed this suit against Quest Trust Company (Quest) in the aftermath of a Ponzi scheme perpetrated by third parties. *See* ECF No. 1 at 6–17. IFG seeks damages and declaratory relief[1] for equitable indemnity, equitable contribution, and tort of another on its own behalf and negligence and breach of implied covenant of good faith and fair dealing as assignee of the Ponzi scheme victims' claims against Quest. 1st Am. Compl., ECF No. 42. Quest now moves for summary judgment. The court recommends that Quest's motion be granted and that the case be dismissed.

## 1. *Background*

IFG is a broker dealer. ECF No. 47 at 6. Quest is a self-directed IRA administrator custodian. 1st Am. Compl. ¶ 2. According to the live pleading, the dispute can be traced back to July 2016, when an IFG representative sold his book of business to Perry Santillo, Jr. 1st Am. Compl. ¶ 10. Santillo worked with others to acquire the client accounts of multiple investment professionals and to convince those clients to

---

[1] IFG includes its request for declaratory relief as a separate cause of action. *See* 1st Am. Compl. ¶¶ 39–44, ECF No. 42.

purchase sham investments. *Id.* ¶ 11. Santillo recommended that the Ponzi scheme victims who held their investments in self-directed Individual Retirement Accounts (IRAs) move their investments from IFG's preferred IRA custodian to Quest. *Id.* ¶¶ 2, 17–18.

Each of the Quest accounts was governed by a custodial agreement. *See* ECF 47-1 at 1. According to Quest's vice president of compliance, "Although some terms of the [custodial agreements] differ depending on the type of account, the responsibilities between Quest and the respective account holder remain the same regardless of the account." *Id.* at 1–2. IFG does not dispute this statement. The custodial agreements each include the following three clauses:

> **Applicable Law:** This Custodial Agreement is subject to all applicable federal laws and regulations and shall be governed by and construed under the applicable laws of the state of Texas, where the Custodian is organized. . . . Any lawsuit filed against or by Custodian shall only be instituted in the district or county courts of Harris County, Texas, . . . and Depositor agrees to submit to such jurisdiction both in connection with any such lawsuit which Depositor may file and in connection with any lawsuit which Custodian may file against Depositor.
>
> **Indemnification:** The Custodian shall have no duty other than to follow the written instructions of the Depositor[] and shall be under no duty to question said instructions and shall not be liable for any investment losses sustained by the Depositor under any circumstances. By performing services under this Agreement, the Custodian [is] acting as the agent of Depositor, and nothing in this Agreement shall be construed as conferring fiduciary status on the Custodian. Depositor agrees to indemnify and hold harmless the Custodian from any and all claims, damages, liability, actions, costs, expenses (including reasonable attorneys' fees) and any loss to the Custodial Account, to the Depositor or to Depositor's beneficiary(ies) as a result of any action taken (or omitted to be taken) pursuant to and/or in connection with any investment transaction directed by Depositor or Depositor's investment advisor or resulting from serving as the Custodian, including, without limitation, claims, damages, liability, actions and losses asserted by the Depositor or the Depositor's beneficiary(ies).

> **No Investment Advice:** The Depositor acknowledges and agrees that the Custodian does not provide or assume responsibility for any tax, legal or investment advice with respect to the investments and assets in the Custodial Account and shall not be liable for any loss which results from the Depositor's exercise of control over the Custodial Account. The Depositor and the Depositor's beneficiary(ies) release, indemnify and agree to hold the Custodian harmless in the event that any investment or sale of the assets in the Custodial Account pursuant to a direction by the Depositor or the Depositor's Investment Advisor violates any federal or state law or regulation or otherwise results in a disqualification, penalty, tax or fine imposed upon the Custodian, the Depositor or the Custodial Account.

ECF No. 47-1 at 160, 162, 179, 181, 194–196 (including same clauses in the three relevant versions of the custodial agreement). There is no dispute that these clauses can be found in all of the custodial agreements at issue in this case. *See, e.g.,* ECF No. 47 at 9–11; ECF No. 50 at 7–8.

In 2018, the Securities Exchange Commission (SEC) discovered Santillo's Ponzi scheme and filed a complaint against Santillo and others alleging that they had defrauded more than 600 investors out of about $102 million. *Id.* ¶ 12. In October 2019 and January 2020, Santillo pleaded guilty to related federal criminal charges. *Id.* ¶¶ 13–14. During the same period, former IFG clients who had invested in the Ponzi scheme filed claims against IFG with the Financial Industry Regulatory Authority (FINRA) and in California federal and state courts alleging that "IFG was vicariously responsible for the bad acts of its agents and for other claims including negligence and breach of fiduciary duties." 1st Am. Compl. ¶ 8. Since December 2019, IFG has been working to settle these cases and, as of April 4, 2022, had indemnified the Ponzi scheme victims in the total amount of $3.62 million. *Id.* ¶ 20. In return, the Ponzi scheme victims "assigned and transferred [to IFG] all of their rights, title and interest in any claims or causes of action[] against Quest." *Id.*

On October 9, 2020, IFG filed this suit in California state court. *See* ECF No. 1 at 6. Quest removed the suit to the United States District Court for the Northern District of California based on diversity jurisdiction. ECF No. 1. On June 22, 2021, the federal district court in California transferred the case to this district under 28 U.S.C. § 1404(a). ECF No. 27. The court found that the forum selection clauses in the custodial agreements, which require that "any lawsuit" filed by or against Quest be brought in Harris County, Texas, were valid and enforceable as to the assigned claims. *See* ECF No. 27 at 5–8; *see also* ECF No. 47-1 at 160, 179, 194. The court also found that IFG's direct claims were "inextricably intertwined" with the assigned claims, which warranted the transfer of those claims as well. *Id.* at 8–11.

The live pleading alleges that Quest's role as custodian, under the circumstances, "legitimized and fostered the success of the Ponzi Scheme[;]" that "Quest knew or should have known that Mr. Santillo was not licensed to sell securities[;]" that Quest failed "to conduct any due diligence" on the investments; that Quest failed "to adhere to industry standards concerning the custodying [sic] of assets[;]" and that Quest failed "to adhere to any reasonable standard of care as an IRA custodian[.]" 1st Am. Compl. ¶¶ 17–19. As direct claims against Quest, IFG raises equitable indemnity, equitable contribution, and tort of another. *See id.* ¶¶ 21–33. Based on the Ponzi scheme victims' assignment of claims, IFG raises negligence and breach of implied covenant of good faith and fair dealing. *See id.* ¶¶ 34–38; 45–50.

On June 10, 2022, Quest filed a motion for summary judgment, arguing that IFG cannot prevail on any of its claims. ECF No. 47. IFG responded, and the motion is now fully briefed. ECF Nos. 50, 51.

## 2. *Summary Judgment Standard of Review*

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a

4

rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary judgment evidence to cite to "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The court, however, does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports [the] claim.").

"[C]onclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'" are not enough to defeat a properly supported motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Nor is the "mere existence of a scintilla of evidence" sufficient; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

3. *Quest's Objections to IFG's Evidence*

As a preliminary matter, the court addresses Quest's objections to IFG's summary judgment evidence and motion to strike, ECF No. 52. IFG submitted three letters that Quest sent to Bennie Hill, one of the Ponzi scheme victims with whom IFG settled. ECF No. 50-1; *see*

5

*also* 1st Am. Compl. ¶ 20. The letters appear to inform and update the addressee about the Ponzi scheme and subsequent proceedings. In an accompanying declaration, IFG's counsel states that IFG obtained the three letters from Quest and that Quest produced other similar letters. ECF No. 50-1. Quest objects to the court's consideration of the letters, arguing that they are not properly authenticated under Federal Rule of Evidence 901. ECF No. 52 at 1. Quest argues that the letters were not produced in this case and that IFG's counsel lacks personal knowledge about them. *Id.* at 2.

On summary judgment, a party may object to exhibits that "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Declarations are competent summary judgment evidence if they are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If evidence is not in admissible form but could be presented in an admissible form at trial, the court can consider it on summary judgment. *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)) ("At the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'"). It appears that the letters could be authenticated at trial by calling Bennie Hill to the stand. In any event, even considering the letters, IFG cannot defeat Quest's motion for summary judgment. Quest's objection is overruled.

### 4. Choice of Law Standards

The first issue the court must consider is which state's law applies to IFG's claims—Texas or California. *See Greenberg Traurig of New York, P.C. v. Moody*, 161 W.S.3d 56, 70 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("The issue of which state's law governs is a question of law for the court to decide."). "A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 65 (2013). Although that rule generally does not

6

apply to cases transferred under Section 1404(a) for the convenience of the parties, it does apply when the case is transferred to enforce a forum selection clause. *Id.* "[W]hen a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a [Section] 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules . . . ." *Id.* at 64. As discussed above, the U.S. District Court for the Northern District of California found that the custodial agreements contained valid and enforceable forum selection clauses that applied to the assigned claims with which IFG's direct claims were "inextricably intertwined," thus requiring the transfer of the entire case. *See* ECF No. 27 at 8–11. Because the claims were transferred to enforce forum selection clauses, the Texas choice-of-law rules apply in this case. *See Atl. Marine Constr. Co.*, 571 U.S. at 64–65.

Texas enforces contractual choice-of-law clauses "if the law chosen by the parties has a reasonable relationship with the parties and the chosen state[] and the law of the chosen state is not contrary to the fundamental policy of the [forum] state." *Caton v. Leach Corp.*, 896 F.2d 939, 942 (5th Cir. 1990); *see also Hyde & Hyde, Inc. v. Mount Franklin Foods, L.L.C.*, 523 F. App'x 301, 305 (5th Cir. 2013). Depending on the language of a choice-of-law clause, it may apply only to claims related to the contract or more broadly to claims arising from the parties' contractual relationship. *See id.* at 943 n.3 (contrasting a narrow choice-of-law clause stating only that "California law will be applied to 'construe' the contract" with a broader clause stating that the chosen state's law would "govern, construe and enforce all of the rights and duties of the parties arising from or relating in any way to the subject matter of this contract[.]").

Absent a contractual choice-of-law clause, Texas law requires the court first to determine whether the applicable laws of the two jurisdictions conflict on any issue pertinent to the case. *Orion Marine Constr., Inc. v. Coyle*, Civil Action No. 4:17-CV-00522, 2018 WL 1251873, at *1 (S.D. Tex. Mar. 12, 2018) (citing *Greenberg Traurig of N.Y., P.C.*, 161 S.W.3d at 69–70; *W.R. Grace & Co. v. Cont'l Cas Co.*,

7

896 F.2d 865, 874 (5th Cir. 1990)). If the states' laws do not conflict, the court "simply appl[ies] the law of the forum state." *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005). On the other hand, if a conflict does exist, the court determines which state has the most significant relationship to the occurrence and parties under the test outlined in the RESTATEMENT (SECOND) OF THE CONFLICT OF LAWS § 6 (Restatement), which lists factors to consider in resolving a conflict. *See Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979) (holding that "in the future all conflicts cases sounding in tort" are to be decided based on the Restatement's "most significant relationship" test). "Th[e] Restatement methodology requires a separate conflict-of-laws analysis for each issue in a case." *Greenberg Traurig of N.Y., P.C.*, 161 S.W.3d at 70.

5. *Choice of Law Analysis*

   A. *Choice-of-Law Clauses in the Custodial Agreements*

The claims that IFG pleaded as assigned to it through settlement with the Ponzi scheme victims are negligence and breach of implied covenant of good faith and fair dealing. 1st Am. Compl. ¶¶ 8, 34–38, 45–50. Quest does not dispute the validity of the assignment of claims. The only evidence in the summary judgment record reflecting what claims the Ponzi scheme victims had and assigned to IFG are the custodial agreements. IFG did not plead a breach of contract claim against Quest. Quest argues that Texas law applies to these claims by virtue of the custodial agreement between Quest and the Ponzi scheme victims. ECF No. 47 at 13; ECF No. 51 at 6–7.

Unlike the broad forum selection clause that applied to *any* lawsuit filed *by or against* Quest, the contractual choice-of-law clause is much narrower. *See* ECF No. 47-1 at 160, 179, 194. It states only that the "custodial agreement . . . shall be governed by and construed under the applicable laws of the state of Texas." *Id.* The language of this choice-of-law clause limits the application of Texas law to construction and application of the custodial agreement. The choice-of-law clause does not extend to claims outside its narrow scope.

8

Other cases have reached the same conclusion. *See, e.g., Caton*, 896 F.2d at 942–43; *Taylor v. U.S. Bank Nat'l Assoc.*, Civil Action No. H-12-3550, 2015 WL 507526, at *5–6 (S.D. Tex. Feb. 6, 2015); *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999).

In *Caton*, the Fifth Circuit determined that language stating "[t]his Agreement shall be construed under the laws of the State of California" did not "address the entirety of the parties' relationship[.]" 896 F.2d at 942–43. The court found that "claims for relief involv[ing] the tort duty of good faith and fair dealing and a claim for restitution under quantum meruit . . . [did] not arise out of the contract" but that the "claim for relief under the implied contractual covenant of good faith depend[ed] on the construction of the contract" and was subject to the choice-of-law clause. *Id.* at 943. *See also Stier*, 992 S.W.2d at 433 (holding that the language "[t]his agreement shall be interpreted and enforced in accordance with the law of the State of Texas" applied only to the interpretation and enforcement of the contract and did not encompass all disputes or tort claims); *Taylor v. U.S. Bank Nat'l Assoc.*, Civil Action No. H-12-3550, 2015 WL 507526, at *5–6 (S.D. Tex. Feb. 6, 2015) (holding that the language "[t]his agreement will be governed by, and construed and enforced in accordance with, the laws of the State of New York, without application of its conflict of laws rules" did not encompass a negligence claim).

In the negligence claim, IFG alleges, in part, that Quest "did not act in accordance with the standard of care of a reasonable IRA custodian when [it] failed to conduct any due diligence on the investments" it held in custody and that Quest's issuance of account statements lulled the Ponzi scheme victims "into believing that their IRA assets were safe and invested in legitimate instruments." 1st Am. Compl. ¶ 35–36. In the breach of implied covenant of good faith and fair dealing claim, IFG alleges that the agreements "contained an implied covenant of good faith and fair dealing and that Quest breached that covenant by taking custody of "fake and illegitimate investments in furtherance of a Ponzi scheme" and interfering with

9

the Ponzi scheme victims' rights to receive the benefits under the custodial agreement.

Following the guidance of the above cases, the court finds that the negligence claim sounds in tort and is not subject to the choice-of-law clause while the breach of implied covenant of good faith and fair dealing claim depends on the construction of the contract and thus is subject to the choice-of-law clause applying Texas law. *Cf. Caton*, 896 F.2d at 943 (finding that implied contractual covenant of good faith was covered by the contract's narrow choice-of-law clause that applied to contract construction); *Stier*, 992 S.W.2d at 433 (finding that a negligence claim was not covered by the contract's narrow choice-of-law clause that applied to contract interpretation and enforcement).

Neither party argues that the contractual choice-of-law clause applies to IFG's direct claims of equitable indemnity, equitable contribution, and tort of another. The court thus moves to a conflicts analysis for equitable indemnity, equitable contribution, tort of another, and negligence.

*B. Conflicts Analysis*

The law of Texas and California conflict on the claim for equitable indemnity. California recognizes equitable indemnity as a common law cause of action. *See Prince v. Pac. Gas & Elec. Co.*, 202 P.3d 1115, 1158 (Cal. 2009). Texas only recognizes equitable indemnity as a common law cause of action in cases involving "purely vicarious liability." *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 360 (5th Cir. 2008). This conflict is pertinent to whether IFG can bring a claim for equitable indemnity in this case in which vicarious liability is not pleaded.

The laws of Texas and California also conflict on the claim for equitable contribution. Under California law, "[e]quitable contribution is the right to recover from a co-obligor who shares a liability with the party seeking contribution." *Cal. Cap. Ins. Co. v. Truck Ins. Exch.*, B306194, 2022 WL 869954, at *5 (Cal. Ct. App. Mar. 24, 2022). In California, equitable contribution can be asserted

against a nonparty to a settlement, whereas, in Texas, "a settling tortfeasor has no right of contribution against non-settling tortfeasors." *Compare id.* at 3–4 *with Jackson v. Freightliner Corp.*, 938 F.2d 40, 41 (5th Cir. 1991). This conflict is pertinent to whether IFG can bring a claim for equitable contribution on the claims it settled with the Ponzi scheme victims.

The laws of Texas and California do not conflict on tort of another on any issue pertinent to this case. California recognizes the tort-of-another doctrine as applying to "economic damages (i.e., attorney fees incurred in litigation with third parties) suffered as a result of an alleged tort." *See Mega RV Corp. v. HWH Corp.*, 170 Cal. Rptr. 3d 861, 879 (Cal. Ct. App. 2014). Although the Supreme Court of Texas has not acknowledged tort of another as a viable legal theory, Texas intermediate appellate courts have recognized tort of another to be "an exception to the general rule that attorney's fees are not available as actual damages." *Tex. Elec. Util. Constr., Ltd. v. Infrasource Underground Constr. Servs., LLC*, No. 12-09-00287-CV, 2010 WL 2638066, at *1 (Tex. App.–Tyler, June 30, 2010, pet. dism'd). Under either state's law, there must be a finding of an underlying tort. *See Mega RV Corp.*, 170 Cal. Rptr. 3d at 879; *Brannan Paving GP, LLC v. Pavement Markings, Inc.*, 446 S.W.3d 14, 27–28 (Tex. App.–Corpus Christi–Edinburgh 2013, pet. denied). Thus, Texas law applies to the tort-of-another claim. *Mumblow*, 401 F.3d at 620 (stating that, if there is no conflict, the forum state's law applies).

The laws of Texas and California do not conflict on negligence. The elements of negligence are the same in both states. The court finds no issue pertinent to this case on which the states' negligence laws conflict. Thus, Texas law applies to the negligence claim. *Mumblow*, 401 F.3d at 620 (stating that, if there is no conflict, the forum state's law applies).

As discussed above, Texas law applies to tort of another, negligence, and breach of the implied covenant of good faith and fair

dealing. The court moves to consideration of the most significant relationship for the equitable indemnity and equitable contribution.

### C. Most Significant Relationship

The "most significant relationship" test requires the court to consider "the contacts listed in Restatement § 145 in light of the factors set forth in Restatement § 6." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Am. Eurocopter Corp.*, 692 F.3d 405, 408 (5th Cir. 2012). The four contacts of Restatement § 145 are: (1) "the place where the injury occurred[;]" (2) "the place where the conduct causing the injury occurred[;]" (3) "the domicile, residence, nationality, place of incorporation, and place of business of the parties[;]" and (4) "the place where the parties' relationship is centered." *Id.* at 408–09. The factors of Restatement § 6 are: "the relevant policies of the forum, the policies of other states and their relative interests in the determination of the particular issue, and the protection of justified expectations." *Id.* at 409.

The first contact is where the injury occurred. The court looks to the underlying claims when a party seeks contribution from the settlement of claims. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 692 F.3d at 408. The Ponzi scheme victims brought claims against IFG claiming it was vicariously responsible for the actions of its agents and that it was negligent and breached its fiduciary duties resulting in the investment losses that the Ponzi scheme victims suffered. The evidence shows that the Ponzi scheme victims were California residents. ECF No. 47-1 at 5–158 (showing California account holders). Thus, their injuries occurred in California. The first contact favors the application of California law.

The second contact is where the injury-causing conduct occurred and is based on the underlying actions of the defendant. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 692 F.3d at 408. IFG alleges that Quest was negligent in handling the accounts which form the basis of the underlying claims. 1st Am. Compl. Quest's principal place of business is in Texas, so the conduct at issue occurred in Texas. ECF No. 47-1 at 1. The second contact favors applying Texas law.

The third contact is the place of incorporation and business of the parties. "In most cases, 'the importance of these contacts depends largely upon the extent to which they are grouped with other contacts.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 692 F.3d at 409 (citing Restatement, § 145 cmt. e). The victims of the underlying Ponzi scheme are from California. ECF No. 47-1 at 5–158 (showing California account holders). It is undisputed that Quest is a corporation organized under the laws of Texas with its principal place of business in Texas. 1st Am. Compl. ¶ 2; ECF No. 1 at 3–4; 1st Am. Compl. ¶ 2. The third contact favors neither state's laws because both states have an equal interest.

The fourth contact is where the parties' relationship is centered and focuses on known contacts between the parties. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 692 F.3d at 409. According to Quest's vice president of compliance, the parties to this suit had no contact before this lawsuit. ECF No. 47-1 at 3. IFG does not dispute this. On the other hand, the custodial agreements between Quest and the Ponzi scheme victims are material to IFG's ability to pursue the claims in this case. Those custodial agreements require both a Texas forum and Texas law. ECF No. 47 at 9–10. Although the choice-of-law provisions in those contracts are not controlling, they suggest that Quest and the Ponzi scheme victims intended to center their relationship in Texas. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 692 F.3d at 409 (concluding the most significant relationship test favored applying Texas law). The court finds that these contractual provisions tip the fourth contact in favor of the application of Texas law.

Turning to the Restatement § 6 factors, the relevant policies of the forum, the policies of other states and their relative interests in the determination of the issue, and the protection of justified expectations, also favor applying Texas law. Texas public policy disfavors "permit[ting] a joint tortfeasor the right to purchase a cause of action from a plaintiff to whose injury the tortfeasor contributed." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 692 F.3d at 409. Here, IFG, having settled with the Ponzi scheme victims, at least implicitly

admits that it is a joint tortfeasor. Texas courts thus would be unlikely to reach "choice-of-law decisions that would frustrate that policy to the detriment of a Texas defendant." *Id.* Texas also has a "substantial interest" in the application of its laws to fraudulent transfers affecting Texas residents. *See Janvey v. Brown*, 767 F.3d 430, 436 (5th Cir. 2014) (addressing a Ponzi scheme operated out of Texas). Because the affected investments were held in the custody of Quest, a Texas company, Texas has an interest in having its law apply. *See* ECF No. 47-1 at 1.

Based on these factors, which on the whole favor applying Texas law, the court finds that Texas law applies to equitable indemnity and equitable contribution as well as all the other claims in the case.

### 6. *Summary Judgment Analysis*

Summary judgment is not the time to rely on allegations. *See McCarty*, 864 F.3d at 357 (stating that the nonmovant must go beyond the pleadings and cite to evidence in support of its claims). The only evidence that IFG submitted on summary judgment are the three letters with attachments that Quest sent to Bennie Hill after the discovery of the Ponzi scheme. *See* ECF 50-1. Otherwise IFG does little more than cite its complaint.

### A. *Equitable Indemnity*

Under Texas law, equitable indemnity is not a recognized cause of action. *See F&F Ranch v. Occidental Chem. Corp.*, No. 14-09-00901-CV, 2011 WL 1123402, at *4 (Tex. App.—Houston [14th Dist.] Mar. 29, 2011, no pet.) (noting that the court found no "cases in which a party ha[d] been 'equitably indemnified'"). Common law indemnity is available in Texas between two joint tortfeasors, only when one is vicariously liable to the other. *See F&F Ranch*, 2011 WL 1123402, at *3 (citing *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 819–20 (Tex. 1984), *receded from on other grounds*); *see also TIG Ins. Co.*, 521 F.3d at 360.

14

IFG does not address the equitable indemnity claim in its response. Even if IFG had addressed the claim, it offers no evidence that would give rise to common-law indemnity under Texas law.

Summary judgment should be granted on IFG's equitable indemnity claim.

*B. Equitable Contribution*

Under Texas law, "[t]he essential prerequisites for a contribution claim are a judgment finding the party seeking contribution to be a joint tortfeasor and the payment by such party of a disproportionate share of the common liability." *Arnold v. Garlock Inc.*, 288 F.3d 234, 237 (5th Cir. 2002) (citing *Beech Aircraft Corp.*, 739 S.W.2d at 21). An arbitration award qualifies as a judgment. *John M. O'Quinn, P.C. v. Lexington Ins. Co.*, 906 F.3d 363, 368 (5th Cir. 2018) (quoting *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002)). However, a settling tortfeasor has no right of contribution against a non-settling tortfeasor. *Jackson v. Freightliner Corporation*, 938 F.2d 40, 41–42 (5th Cir. 1991) (examining Texas case law).

IFG argues that, pursuant to *Pacesetter Pools, Inc. v. Pierce Homes, Inc.*, 86 S.W.3d 827 (Tex. App.—Austin 2002, no pet.), they may seek contribution from Quest. ECF No. 50 at 15–16. IFG is mistaken that this case is like *Pacesetter*. The court in *Pacesetter* relied on an underlying arbitration award, which carries the weight of a judgment. *Pacesetter*, 86 S.W. 3d at 832. Here, IFG not only did not produce an arbitration award as summary judgment evidence but did not plead that the FINRA proceeding ended in an arbitration award. In the live pleading IFG plainly stated that the Ponzi scheme victims settled their FINRA claims with IFG. 1st Am. Compl. ¶ 8.

Further, IFG has provided no evidence showing that Quest was found to be a joint tortfeasor or that Quest was even named in the underlying proceedings at any time. IFG has not met the prerequisites of a contribution claim. Moreover, contribution and indemnity rely on the notion that the other party is somehow liable. So, also for the

15

reasons stated next, there is no contribution or indemnity because no evidence shows that Quest participated in any tort.

Summary judgment should be granted on IFG's equitable contribution claim.

### C. Tort of Another

Under Texas law, tort of another is "an exception to the general rule that attorney's fees are not available as actual damages." *Tex. Elec. Util. Constr., Ltd.*, 2010 WL 2638066, at *1. The theory provides that:

> "One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action."

*Id.* at *2 (quoting RESTATEMENT (SECOND) OF TORTS § 914(2) (1979)).

The Supreme Court of Texas has not addressed whether recovery under the tort-of-another theory is available under Texas law. *See Tex. Elec. Util. Constr., Ltd.*, 2010 WL 2638066, at *1 (stating that the Supreme Court of Texas "discussed, without expressly adopting" the tort-of-another exception); *Akin, Gump, Strauss, Hauer & Feld, LLP v. Nat'l Dev. & Res. Corp.*, 299 S.W.3d 106, 119 (Tex. 2009) (stating that it was not necessary in the case to address and the court would not "address whether [tort-of-another] exception . . . should be adopted as Texas law"). Several intermediate Texas courts of appeal have held that attorneys' fees incurred in third-party litigation that are traceable to a defendant's wrongful act are recoverable as damages. *See, e.g., OPF Enters., LLC v. Evanston Ins. Co.*, No. 4:21-CV-01835, 2021 WL 4710948, at *4 (S.D. Tex. Oct. 7, 2021). However, even assuming the tort-of-another theory allows for recovery of attorney's fees under Texas law, there must be a finding of an underlying tort. *Brannan Paving GP, LLC*, 446 S.W.3d at 27–28.

In this case, the court need not reach whether Texas law would allow for recovery of attorney's fees under the tort-of-another theory.

As discussed herein, there is no underlying tort that would provide a basis to recover under the theory.

Summary judgment should be granted on IFG's tort-of-another claim.

### D. Negligence

Under Texas law, a negligence claim requires proof of a legal duty, breach of that duty, and damages proximately caused by the breach. *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022). "The threshold inquiry in a negligence case is duty." *Id.* "[T]he existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Id.* (quoting *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)).

The only element Quest challenges is the first—the existence of a duty. It is undisputed that the Ponzi scheme victims owned self-directed IRAs. *See* 1st Am. Compl. ¶ 2; ECF No. 47-1 at 5–158. Quest points to the custodial agreements, arguing that they did not impose a duty of due diligence to investigate the Ponzi scheme victims' chosen investments. ECF No. 47 at 14–15. The custodial agreements state that Quest "shall have no duty other than to follow the written investment directions of the Depositor[] and shall be under no duty to question said instructions and shall not be liable for any investment losses sustained by the Depositor under any circumstances."[2] ECF No. 47-1 at 162, 181, 195–96. This limitation of duties is repeated in several provisions of the custodial agreements. *See id.*

To the extent that the custodian of a self-directed IRA owes any duties to the IRA account holders under Texas common law, "Parties

---

[2] To be clear, IFG did not bring a breach of contract claim and does not argue that Quest failed to follow the written instructions of any depositor or failed to perform any duties that Quest contractually undertook.

may contractually agree to limit or expand fiduciary duties that would ordinarily exist . . . ." *Eurecat US, Inc. v. Marklund*, 527 S.W.3d 367, 384 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *Nat'l Plan Adm'rs v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 703–04 (Tex. 2007) (holding fiduciary duties owed by an agent to a principal may be defined by contract and "declin[ing] to impose a general fiduciary duty on [the agent] when the parties expressly agreed that [the agent] could take actions that would be in violation of such a duty")); *see also Searcy, Tr. for Saratoga Litig. Tr. v. Cooke*, Civil Action No. H-17-2213, 2017 WL 11684723, at *2 (S.D. Tex. Nov. 13, 2017) (recognizing that, when an agreement sets out specific fiduciary duties, interpretation of that agreement determines the scope and extent of those duties). Other courts have also found that custodians of self-directed IRAs do not owe any duties beyond those created by contract. *See Labaty v. UWT, Inc.*, 121 F. Supp. 3d 721, 739–40 (W.D. Tex. 2015) (citing *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947–48 (11th Cir. 2014) (applying Florida law but citing cases in other states); *Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732, 743 (7th Cir. 1999) (applying Indiana law); SEC, "Investor Alert: Self-Directed IRAs and the Risk of Fraud," Sept. 2011, http://www.sec.gov/investor/alerts/sdira.pdf (2018 version)).

IFG argues that reading the custodial agreements to limit the duties Quest owed to the account holders would give it "blanket immunity." ECF No. 50 at 8–9. The court disagrees. Texas law allows for just that.

IFG fails to cite evidence or legal authority supporting any other source of an alleged duty of due diligence. IFG thus fails to produce evidence of a duty as required to establish a negligence claim. For this reason alone, the court finds that IFG's negligence claim should be dismissed. The court does not reach Quest's argument that the economic loss doctrine also warrants summary judgment.

Summary judgment should be granted on IFG's negligence claim.

*E. Breach of Implied Covenant of Good Faith and Fair Dealing*

Under Texas law, "not all contracts contain an implied covenant of good faith and fair dealing." *Houle v. Casillas* 594 S.W.3d 524 (Tex. App.—El Paso 2019, no pet.) citing *Saucedo v. Horner*, 329 S.W.3d 825, 831–32 (Tex. 2010)). The claim "is a tort action that arises from an underlying contract." *Saucedo*, 329 S.W.3d at 831. Texas differs from other states in that "contracting parties owe a good-faith duty only if they expressly agree to act in good faith, a statute imposes the duty, or the parties have a 'special relationship' like that between an insurer and insured." *Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 369 n.13 (Tex. 2019) (citing *Subaru of Am. Inc. v. David MdDavid Nissan, Inc.*, 84 S.W.3d 212, 225 (Tex. 2002)). Only in cases where there is a special relationship, such as between an insurer and its insured, does Texas law impose an actionable duty of good faith and fair dealing. *Id.* Whether the duty exists is a question of law. *Id.*

Quest argues that, because it entered custodial agreements that limited Quest's role to following the written instructions of the account holders, IFG cannot establish a special relationship. ECF No. 47 at 19. IFG responds by *alleging* that "Quest's conduct was either tainted by an improper motive . . . or was undertaken in willful ignorance of the true facts of the Ponzi scheme." ECF No. 50 at 13. Allegations are not enough to meet IFG's summary judgment burden. *See McCarty*, 864 F.3d at 357 (stating that the nonmovant must go beyond the pleadings and cite to evidence in support of its claims). Although IFG disagrees with Quest that the provisions of the custodial agreement preclude the existence of a special relationship, IFG fails to cite any evidence showing that Quest and the Ponzi scheme victims fall within the Texas legal definition of a special relationship giving rise to an implied duty of good faith and fair dealing.

IFG argues that Quest undertook a special relationship with the Ponzi scheme victims because it "belatedly communicat[ed] with its clients about Santillo's scheme." ECF No. 50 at 14 (citing the three

letters that Quest sent to Bennie Hill about the Ponzi scheme after the fact). Actions Quest took to inform the Ponzi scheme victims after the Ponzi scheme was discovered are not evidence of a prior special relationship. The prior relationship was governed by the custodial contracts, which, as discussed above, significantly limited Quest's fiduciary duties.

Summary judgment should be granted on IFG's claim for breach of implied covenant of good faith and fair dealing.

*7. Conclusion*

Because there is no genuine dispute of material fact and Quest is entitled to judgment as a matter of law, the court recommends that Quest's motion for summary judgment be granted and that this case be dismissed with prejudice.

The parties have fourteen days from service of this memorandum and recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on December 21, 2022.

Peter Bray
United States Magistrate Judge